RECEIVED
LAKE CHARLES, LA

JUL 07 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAMES H. FONTENOT, ET AL | : | **DOCKET NO. 03 1960** |
| VS. | : | **JUDGE MINALDI** |
| ONE BEACON AMERICA INSURANCE CO, ET AL. | : | **MAGISTRATE JUDGE WILSON** |

### MEMORANDUM RULING

#### Summary

Presently before the court are the parties Cross-Motions for Summary Judgment [docs 39 & 45]. Plaintiffs JAMES H. FONTENOT and SHARON ANNE FONTENOT have filed this action against ONE BEACON AMERICA INSURANCE COMPANY, as successor of COMMERCIAL UNION INSURANCE COMPANY and NORTHERN ASSURANCE COMPANY OF AMERICA for damages resulting from defendants' failure to fulfill their duties to defend their insured, James H. Fontenot. In addition to attorney's fees and cost of providing their own defense, plaintiffs seek an award of penalties pursuant to Louisiana Revised Statute 22:1220 or, alternatively, Louisiana Revised Statute 22:658 or both. The defendant argues that no duty to defend plaintiffs ever arose because (1) the occurrence required to trigger coverage took place outside the policy period, and (2) even if the court determines that the occurrence took place within the policy period, coverage was nevertheless barred under the "work product exclusions." For the reasons provided, Summary Judgment in favor of defendants is GRANTED.

## Procedural history

This petition was filed on August 22, 2003 in the 14th Judicial District Court of Louisiana, Parish of Calcasieu. The defendants filed a motion to remove the case to this court on October 22, 2003 on the basis of diversity jurisdiction. 28 U.S.C. §1332. Pursuant to Magistrate Judge Wilson's November 25, 2003 order, defendants filed an amended notice of removal pursuant to 28 U.S.C. §1653 setting forth the facts which support a finding that the requisite jurisdictional amount was in controversy at the time of removal. Magistrate Judge Wilson' Minute Entry was then entered on January 14th, 2004, finding that the defendants had established that the amount in controversy exceeded the statutory minimum. On March 30, 2005, the parties entered into a Joint Stipulation and Request for Trial on Stipulated Facts, agreeing that the facts of this case are not in dispute and that disposition of the case exclusively involves application of the law to these facts.

## Summary judgment standard

The parties have requested a final decision by this court upon their cross-motions for summary judgment in lieu of an actual trial. Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant

must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact. [1] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

With respect to motions for summary judgment on the issue of an insurer's duty to defend, once a moving party meets its burden of proving there is no genuine issue of material fact and that the pleadings and the face of the insurance policy establish a duty to defend, as a practical matter, an opposing party cannot defend against the inevitable summary judgment because, "[t]he duty to defend is determined solely from the plaintiff's pleadings and the face of

---

[1] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248,106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

the policy, without consideration of extraneous evidence." *Milano v. Board of Com'rs of New Orleans Levee Dist.*, 691 So.2d 1311, 1314 (La.App. 4 Cir. 1997).

## Analysis

### Background

On December 17, 1990, Gerald Saucier filed a PETITION FOR RESCISSION OF SALE AND DAMAGES, naming as defendants the City of Sulphur, James H. Fontenot and Sharon Ann Fontenot, captioned GERALD D. SAUCIER VS. NO. 90-6415, CITY OF SULPHUR, JAMES H. FONTENOT and SHARON ANN FONTENOT. (Exhibit A). The Petition alleged James H. Fontenot was both the seller of the house to Gerald Saucier (July 30, 1982) and its builder. The Petition alleged the redhibitory defect of James H. Fontenot building the house on a foundation he laid over an old defective water line. By way of a SECOND SUPPLEMENTAL AND AMENDED PETITION on September 7, 1995, Gerald Saucier alternatively alleged James H. Fontenot was a contractor and commercial builder/seller of homes and built the home in question with defects of construction, renovation or repair (Exhibit B).

Commercial Union issued a policy to the Fontenots for the period from July 19, 1979 to July 19, 1980 (Policy #CE D547919) as did Northern Assurance with a policy period from July 19, 1980 through April 1, 1983 (Policy # NE 9015-102) (Exhibits C and D). The Fontenots made a tender of defense and indemnity to Commercial Union and Northern Assurance through their respective agents relative to the claims made and litigation brought against them by Gerald D. Saucier. The tenders of defense and indemnity were made by certified letters dated March 6, 1991 and April 12, 1991 (Exhibits E and F). By letter dated April 12, 1991, Commercial Union declined the tender of defense and indemnity, stating that the date of loss was January 16, 1990,

when Gerald D. Saucier discovered the alleged damage, and that this loss had, therefore, occurred outside the policy period. Commercial Union denied and disclaimed any and all liability under the above-referenced policy and any judgment that might be rendered against the defendents in the action brought by Saucier (Exhibit G). In defense of the claim by Saucier, the Fontenots incurred legal fees and costs in the amount of $31,266.55.

### Law and Analysis

In order for an insured to prevail in a case against an insurer for damages resulting from the insurer's failure to defend, the insured must show 1) that a legal duty existed on the part of the insured, 2) the insurer in fact breached that duty by failing or refusing to defend the insured in the underlying litigation, and 3) the insured suffered damages in the form of attorney's fees and costs incurred in defending the underlying suit on their own. The undisputed facts of this case leave no question with respect to the elements of breach and damages. The underlying suit has been completed and it is clear from the record that the defendants took no part in that litigation. In addition, the Fontenots have submitted to this court a copy of all attorney's fees and costs incurred in defense of the Saucier lawsuit and One Beacon has declined to contest those numbers. Thus, there is only one issue to consider: Whether a duty to defend attached at the time of the Petition in 1990 or the Second and Supplemental Petition in 1995.

**Duty to Defend**

Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. *American Home*

*Assurance Company v. Czarniecki*, 255 La. 251, 230 So.2d 253, 259 (1969). The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence. *Milano v. Board of Com'rs of New Orleans Levee Dist.*, 691 So.2d 1311, 1314 (La.App. 4 Cir. 1997), quoting *Bryant v. Motwani*, 96-1351 (La.App. 4th Cir. 10/30/96), 683 So.2d 880.

Under Louisiana law, an insurance policy is an agreement between parties and should be interpreted using ordinary contract principles. *Ledbetter v. Concord General Corp.*, 95-0809 (La.1/6/96), 665 So.2d 1166, 1169. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. *See* LSA-C.C. art.2046; *Magnon v. Collins*, 98- 2822 (La.7/7/99), 739 So.2d 191, 197. Further, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. And finally, regarding such limitations, it is the insurer's burden to show that a loss falls within a policy exclusion. *Classert v. Butler*, 98-1991 (La.App. 1st Cir.11/5/99), 746 So.2d 787, 792. *Melder v. Louisana Farm Bureau Mut. Ins. Co.*, 2005 WL 327714, 2, 2003-2674 ,4 (La.App. 1 Cir., 2005). Thus, if, assuming all the fact allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit or the eventual determination of actual coverage. The allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured. *Yount v. Maisano*, 627 So. 2d 148 (La. 1993); *American Home Assurance Co. v. Czarniecki, supra*; *C.L. Morris, Inc. v. Southern American Ins. Co.*, 550 So. 2d 828 (La. App. 2d Cir. 1989); *Milano v. Board of Com'rs of*

*Orleans Levee Dist.*, 96- 1368 (La. App. 4th Cir. 3/26/97), 691 So. 2d 1311.

The relevant portions of the Commercial Union Insurance Agreement are as follows:

## Section II - LIABILITY COVERAGE

## COMPREHENSIVE LIABILITY

### COVERAGE C - BODILY INJURY AND PROPERTY DAMAGE

The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies, *caused by an occurrence*, and the company *shall have the right and duty to defend any suit against the insured* seeking damages on account of such bodily injury or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgment or settlements. [emphasis added]

#### DEFINITIONS APPLICABLE TO SECTION II

**"Occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

**"Property Damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, *including the loss of use thereof at any time resulting therefrom*, or (2) loss of use of tangible property which has not been physically injured or destroyed *provided such loss of use is caused by an occurrence during the policy period.* [emphasis added]

## A.    "Occurrence" Analysis

One Beacon's first argument is that at the time it drafted its letter denying coverage to plaintiff and at all times prior to August 5, 1990 (the date upon which the co-defendant City of Sulphur filed a cross claim asserting negligence), the only claim made against plaintiffs was one in redhibition.  Since Louisiana case law holds that the sale of a house does not constitute an "accident" and therefore is not an "occurrence," defendant argues that general liability policies requiring an occurrence in order to trigger coverage do not afford coverage for redhibition claims.  *Lawyer v. Kountz*, 716 So.2d 493 (La. App. 4th Cir. 1998); *Swartz v. Woodlawn* 610 So.2d 888 (La.App. 1st Cir. 1992).  One Beacon argues that its refusal to defend was appropriate because under no circumstances would the policy afford coverage for the redhibition claim against the Fontenots.  As a subset to this argument, One Beacon argues that both the negligence claim asserted by the City of Sulphur on August 5, 1990 as well as the claims made against the Fontenots in Saucier's SECOND SUPPLEMENTAL AND AMENDING PETITION are similarly barred from coverage under the policy because the occurrence giving rise to those claims also took place outside of the policy period.  One Beacon asserts that because both policies at issue limit coverage to "occurrences" taking place "during the policy period," no possibility of coverage - and consequently no duty to defend - ever existed for those claims either.

In *Lawyer v. Kountz*, 716 So.2d 493, 1997-2701 , 3 (La.App. 4 Cir.,1998) the purchasers of a home brought an action in redhibition to rescind the sale of a house allegedly infested with termites at the time of sale.  The insured filed a third party action against their insurer seeking coverage for the claim and the court held that the sale of the property with hidden defects was not an "accident" and therefore the "occurrence" required in order to trigger coverage under the

policy never took place. *Id* at 495.

In *Swarts v. Woodlawn*, 610 So.2d 888, *890 (La.App. 1 Cir.,1992) the purchasers of a home filed a redhibition claim against the builders and sellers, as well as the insurers of both, after discovering that the home was structurally defective. One of the insurers filed a motion for summary judgment on the basis that its policy did not provide coverage for the claims. The court held that where the liability of a contractor is based solely on improper construction, courts have refused to find an "occurrence" in insurance policies containing identical or substantially similar definitions of an "occurrence" as the one present here.

The crux of One Beacon's argument can be summarized as follows: The only claim present within the pleadings is one in redhibition which requires the homeowner to prove that the defect existed *at the time of sale*. However, the substantial weight of Louisiana jurisprudence holds that neither defective construction by itself (i.e. without discovery of the defect) nor a sale of a home with hidden defects fit the policy definitions of "property damage" or "occurrence" as defined in most policies. Consequently, neither can be used to trigger coverage under a policy that requires these terms. See *Korossy v. Sunrise Homes, Inc.*, 653 So.2d 1215, *1225 (La.App. 5 Cir.,1995). Rather, a court must use some other measure to determine when property damage actually "occurs." One Beacon argues that as a matter of law property damages does not "occur" until the damages "manifest" themselves and because manifestation did not take place until 1990, the property damage did not "occur" until outside the policy period.

Putting aside, for now, the larger question of the appropriateness of the manifestation rule to this case, and looking solely to the original pleadings against the Fontenot's, it can hardly be said that the only claim made against the Fontenots was one in redhibition. Paragraph 4 and 5 taken together allege that "James H. Fontenot...built the house on the aforementioned property"

and when he did, "he laid the foundation over an old defective water line." Redhibition is a remedy relating solely to the *sale* of a product with hidden defects. LSA-C.C. Art. 2520 states that "the *seller* [of a good] warrants the buyer against redhibitory defects, or vices, in the thing *sold*" [emphasis added]. If it turns out that such a defect exists, the buyer has the right to obtain either rescission of the sale or a reduction in the price paid (depending on the severity of the defect). *Id.* However, redhibition does not relate to, nor does it provide a remedy for, the act alleged to have caused the defect. It is enough that a redhibitory defect exists at the time of sale, regardless of its cause. Thus, the language in Saucier's pleadings alleging that Fontenot was the "builder" of the house is clearly unrelated to his redhibition claim. Furthermore, in order to grant *Saucier's* request for damages for his alleged emotional distress and mental anguish, the court would have to do so based on an entirely separate remedy; one which is not purely transactional in nature. The allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured. *Yount v. Maisano*, 627 So. 2d 148 (La. 1993). These allegations, though admittedly broad, leave open the possibility for more specific tortuous claims against the Fontenots at some future point in the litigation. Additionally Louisiana courts have observed that "...the absence of detailed times, dates, and places in the petition does not defeat our conclusion that the allegations state, at least rudimentarily, a claim which may be covered by the insurance contract. The fact that the allegations of the petition could be clarified to unambiguously include coverage also shows the original petition did not unambiguously exclude coverage." *City of Plaquemine v. North American Constructors, Inc.* 683 So.2d 386, 388 (La.App. 1 Cir.,1996, citing *Federal Insurance Company v. St. Paul Fire & Marine Insurance Company,* 93-1099, p. 7 (La.App. 1st Cir. 6/24/94) 638 So.2d 1132, 1135. In other words, although One Beacon may

have substantial authority to support its contention that the sale of a house with a redhibitory defect can never constitute an "accident" and therefore can never be an "occurrence" as required for coverage, that point is irrelevant in this case because Saucier's initial pleadings are sufficiently broad so as to include claims other than redhibition.

This court must still address the related question of whether or not, under any of the possible claims included within the pleading, "property damage" could have "occurred" during the policy period. Generally speaking, there are two different legal theories of when damages "occur" for purposes of determining whether they fall within the applicable policy period; the exposure theory and the manifestation theory. Under the exposure theory damage is considered to have occurred when the act which resulted in the damage took place. See *Cole v. Celotex Corp.*, 599 So.2d 1058 (La.1992); *Armstrong v. Land & Marine Applicators*, 463 So.2d. 1327 (La.App. 5th Cir. 1984). Applying the exposure theory to this case would mean that even though the damage to the house did not manifest itself until it was discovered by Saucier, defendant could have been held liable under the policy because it was Fontenot's construction of the house on top of the water line during the policy period that allegedly caused the damage. Alternatively, Defendant urges the court to adopt the manifestation theory in deciding when damage occurs. Under this theory, property damage is deemed to occur at the point when it becomes manifest. Thus, using the manifestation rule, the "occurrence" at issue did not manifest itself until January 16, 1990, the date that the abandoned leaking water line was discovered; a date that defendant argues was far beyond the coverage period of the policy in question.

In *Rando v. Top Notch Properties, L.L.C.*, (879 So.2d 821; La. App. 4th Cir., 2004) the Fourth Circuit Court of Appeals for the State of Louisiana acknowledged the existence of an ambiguity inherent in coverage provisions that include the requirement that property damage

result from an "occurrence" when that term is defined (as it is here) as an "accident, including continuous and repeated exposure to conditions." The court engaged in a discussion of two case lines reaching different conclusions as to whether or not faulty construction can be considered an "accident"or "occurrence." The entirety of that discussion need not be duplicated here. Instead, it is enough to note that several cases (including *Rando*) interpreting definitions of "occurrence" that are materially the same as the one here, have held that the defective construction of a home could be considered an accident for purposes of determining whether an occurrence has taken place. *Rando* at 828; citing *Serigne v. Wildey* 612 So.2d 155 (Faulty construction and defective workmanship can constitute an accident or occurrence in spite of the fact that the problems may evolve over a period of time); *Western World v. Paradise Pools & Spas* 633 So.2d 790 (Occurrence was ambiguous because it was defined as an accident, including continuous or repeated exposure to conditions and thus could be construed to include development of cracks in swimming pool, so that the policy in that case covered the damages). See also *Korossy v. Sunrise Homes, Inc.* 653 So.2d 1215, 1224. However, the *Rando* court found that based on it's extensive survey of cases, "...the clear weight of authority in more recent cases considers defects in construction that result in damage subsequent to completion to be accidents and occurrences when they manifest themselves." *Rando* at 833. Thus, One Beacon urges this court to apply the manifestation rule to hold that the possibility of coverage never existed under the policies.

One Beacon's reliance on cases applying the manifestation rule is misplaced. This court agrees with One Beacon that "the clear weight of authority in recent cases" has held that the manifestation rule is the proper theory to use in most instances when determining the timing of an occurrence. That point has been made even more clear in caselaw such as *Rando* arising between the Fontenot's original tender for defense and the present. It should also be noted,

however, that the *Rando* court, recognizing the lack of uniformity on this issue, qualified their holding in the subsequent sentence by stating, "a clear signal from the Supreme Court on this issue would surely do much to eliminate expensive future litigation." *Id* at 833.

The decision in *Rando* can hardly be construed as a genuine "stamp of approval" for use of the manifestation rule as a matter of law. More importantly, the holding in *Rando* makes this inquiry less than dispositive in this case. The *Rando* court concluded that the proper inquiry for a court deciding a question of coverage should focus on the applicable exclusions under the policy rather than trying to determine, with any certainty, whether and when an "occurrence" has taken place. In defining the proper inquiry the *Rando* court cited to the approach suggested by Professors William S. McKenzie and H. Alston Johnson, III, in their treatise on Louisiana insurance law:

> Whether there has been an occurrence...depends on whether there has been an "accident," not upon the legal cause or consequences of that accident. Defective workmanship... is an 'accident' ....[Therefore], [w]ith construction defects, the real issue usually is not whether there has been an 'occurrence' but whether there has been property damage during the policy period, and, if so, *whether the "work product exclusion" is applicable.* If the roof leaks or the wall collapses, the resulting property damage triggers coverage under an "occurrence" basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor. Whether coverage for such an "occurrence" is excluded by the work product or other exclusion is a separate, very important inquiry. On the other hand, the mere existence of a construction defect does not trigger coverage under an occurrence basis policy; coverage is triggered only if the defect causes property damage during the policy term.[2] [emphasis added]

Using this approach, as long as it is possible that property damage occurred to the house built by Mr. Fontenot during the policy period, a court must move on to decide the case on the

---

[2]Quoting MCKENZIE AND JOHNSON, 15 LOUISIANA CIVIL LAW TREATISE, INSURANCE LAW AND PRACTICE §183, at p. 370 (2d ed. 1996)

applicability of any relevant exclusions.[3] One particularly pertinent case, decided eight years

---

[3] This court acknowledges plaintiffs attempt to interpret the definition of "property damage" in such a way that would eliminate the requirement that property damage occur during the policy period. However, such an interpretation contradicts the plain meaning of the language used. In the instant policies, the general liability provisions provide coverage "for property damage...caused by an occurrence," where property damages is defined as "(1) physical injury to or destruction of tangible property which occurs *during the policy period*, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." First, plaintiffs contend that the fact that the occurrence did not manifest itself during the policy period is irrelevant because the additional language "loss of use at any time"in part (1) of the definition serves to extend the policy's coverage to include loss of use outside the policy period. The fact that an insurance policy is a complex instrument requiring analysis does not render it ambiguous. *Oxner v. Montgomery,* 34,727, p. 6 (La.App. 2 Cir. 8/1/01), 794 So.2d 86, 90-91. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties. *Reynolds v. Select Properties, Ltd.,* 93-1480 (La.4/11/94), 634 So.2d 1180, 1183; *Ott v. LPK Systems, Inc.,* 2000-1813 (La.App. 4 Cir. 11/28/01), 812 So.2d 38, 41. Only if the language can reasonably be read to have more than one reasonable meaning can the language be said to be ambiguous. It is the phrase "during the policy period" and not "at any time" which modifies the first clause of the property damage definition, thereby setting the time frame in which property damage must occur. The modifier "at any time" merely extends the time frame for coverage for loss of use rather than eliminating the requirement that such loss of use result from damage to property which occurs during the policy period. Similarly, plaintiffs argument with respect to part (2) of the property damage definition represents precisely the type of "perversion of language" that this court must guard against. Plaintiffs contend that the use of the term "occurrence" in the definition of "property damage" produces an inherent ambiguity in the policy as a whole by effectively defining an occurrence as an occurrence. The mere use of the terms "property damage" and "occurrence" within the definitions of the other is not sufficient to create an ambiguity here. There is only one meaning that can be given to these provisions when properly read in tandem; that loss of use, provided that such loss of use is caused by an accident during the policy period and not some other reason, qualifies as the type property damage that must result during the policy period under the definition of occurrence. In other words, part (2) serves to expand the scope of coverage to include a type of harm that would not otherwise be included within the policy. Furthermore, the very crux of Saucier's petition is the existence of a cracked slab caused by plaintiff's defective workmanship. In other words, it is clear that property damage did occur *at some point* and the only dispute is over when that damage occurred. Thus, part (2) is inapplicable to this case. In any event, given this courts ultimate determination that property damage could in fact have occurred during the policy period, it need not address these interpretive questions any further.

prior to *Rando* by the same Fourth Circuit court, expressly addressed this issue and refused to

hold that property damage could not occur prior to manifestation. In *Orleans Parish School*

*Board v. Scheyd, Inc., et al,* 673 So.2d 274, (La 1996) the court held that while "...the better rule

is to deem the occurrence took place when the damage was discovered...we can not make the

'quantum leap' and say that the manifestation rule is applicable as a matter of law, in all cases."

*Id.* On appeal of summary judgment in favor of insured, the Court held that the manifestation

rule could not support a conclusion that there was absolutely no coverage, and thus no duty to

defend where the School Board did not become aware of faulty installation of plumbing by the

insured until six years after the insured's policy expired. In *Scheyd*, the court held that while the

School Board's petition did not allege a specific date as to when the damage occurred, it did

allege that the defective installation of the plumbing led to clogged drains and the odor of

sewage. *Id* at 278. Thus, the *Scheyd* court determined that had the case gone to a trial on the

merits, it would have been "...reasonable for a trial court to conclude...that the [odor and

clogged drains were] not damage, only evidence of damage" which did not necessarily evidence

the time frame in which damage actually occurred. Although *Rando* was decided after *Scheyd*,

the Fourth Circuit did not overrule its prior decision. Rather, it chose to distinguish that case on

its facts based on the change in nature of the relevant inquiry:

> [*T*]*he issue... is not so much whether there was an occurrence or whether an*
> *occurrence occurred during the period of coverage... but whether the work*
> *product exclusion applies.* In *Scheyd,* the work product exclusion was replaced
> with a Broad Form Comprehensive endorsement that this Court found created
> sufficient ambiguity to require the insurer to provide a defense, although this court
> specifically reserved to the insurer the right at a trial on the merits to prove that
> there was no coverage. Such a Broad Form Comprehensive endorsement is not to
> be found in the instant case. Rando at 836. [emphasis added].

One Beacon would have this court apply the manifestation rule, after the fact, to hold that because no coverage ultimately existed under the policy, no duty to defend ever arose. This court disagrees with that assertion. To reiterate the law, the duty to defend arises whenever the pleadings against the insured disclose *even a possibility of liability* under the policy. *Steptore v. Masco Const. Co., Inc.,* 93-2064 (La.8/18/94), 643 So.2d 1213; *Yarbrough v. Federal Land Bank of Jackson,* 31,815 (La.App. 2 Cir. 3/13/99), 731 So.2d 482. *Lang v. Asten, Inc.* 900 So.2d 1031, 1038 (La.App. 4 Cir.,2005). Louisiana jurisprudence interpreting the terms "property damage" and "occurrence" are far from uniform and even *Rando,* upon which One Beacon relies so heavily, does not give us a definitive statement as to their legal meanings. Therefore, this court cannot say with certainty that the property damage did not occur during the policy period and that coverage was unambiguously excluded under the general liability provision[4]. Therefore, if One Beacon is to justify its refusal to defend the Fontenots it must do so based on the applicability of one of the various exclusions expressed within the policy.

Clearly, based on the multiple interpretations presented herein the policy is ambiguous and any ambiguity acts to the detriment of the drafter, One Beacon.

## B. Work-Product Exclusions

One Beacon's next argument is that although both insurance policies provide coverage for claims that fall within the products completed operations, they each contain "work product" exclusion provisions which unambiguously exclude coverage for property damage resulting from work performed by the insured. Defendant's argue that the non-redhibition claims included

within Saucier's original petition, The City of Sulphur's cross-claim for negligence and Saucier's

1995 amended petition all fall within the coverage provision for "products completed operations

hazard," identical versions of which are included within both policies and read as follows:

> "Completed operations hazard includes bodily injury and property damage arising
> out of operations or reliance upon a representation or warranty made at any time
> with respect thereto, but only if the bodily injury or property damage occurs after
> such operations have been completed or abandoned and occurs away from
> premises owned by or rented to the named insured. 'Operations' include materials,
> parts or equipment furnished in connection therewith. Operations shall be deemed
> completed at the earliest of the following times:
> (1) When all operations to be performed by or on behalf of the named insured
> under the contract have been completed.
> (2) When all operations to be performed by or on behalf of the named insured at
> the site of the operations have been completed, or
> (3) When the portion of the work out of which the injury or damage arises has
> been put to its intended use by any person or organization other than another
> contractor or subcontractor engaged in performing operations for a principal as a
> part of the same project.
> Operations which may require further service or maintenance work, or correction,
> repair or replacement because of any defect or deficiency, but which are otherwise
> complete, shall be deemed completed."

Defendants note that in policies providing coverage for products completed operations

hazard there are exclusions which temper this coverage, therefore the policy exclusions must be

examined to determine whether one of them is applicable. The "work product" exclusion for the

Commercial Union Policy provides, "This insurance does not apply...(g) to property damage to

work performed by or on behalf of the named insured arising out of work or any portion thereof,

or out of materials, parts or equipment furnished in connection therewith."[5] The language

contained in the Northern Assurance policy differs in form but not in substance. That policy

provision states, "This insurance does not apply:...(k) with respect to the completed operations

hazard and with respect to any classification stated in the schedule as 'including completed

---

[5]Commercial Union Policy

operations,' *to property damage* to work performed by the named insured arising out of the work or any portion thereof..."

These provisions are generally referred to as a "work product exclusion". *See Allen v. Lawton and Moore Builders, Inc.,* 535 So.2d 779, 781 (La.App. 2d Cir.1988). They unambiguously exclude coverage for damage to the work product itself, as in this case, the home constructed by Mr. Fontenot. It has been consistently held that a liability policy with a work product exclusionary clause, such as the one set forth above, does not provide coverage to the insured for repair or replacement of his own defective work or defective product. *Swarts v. Woodlawn, Inc.* 610 So.2d 888, 890 -891 (La.App. 1 Cir.,1992); *Parker v. Dubus Engine Company,* 563 So.2d 355, 360 (La.App. 3d Cir.1990); 891 *Allen v. Lawton and Moore Builders, Inc.,* 535 So.2d at 781-782; (La.App. 2d Cir.1988); *Fredeman Shipyard, Inc. v. Weldon Miller Contractors,* 497 So.2d at 375; *Old River Terminal Co-Op v. Davco Corporation of Tennessee,* 431 So.2d 1068 (La.App. 1st Cir.1983); *Bacon v. Diamond Motors, Inc.,* 424 So.2d at 1157; *Breaux v. St. Paul Fire and Marine Insurance Company,* 345 So.2d 204 (La.App. 3d Cir.1977); *Vobill Homes, Inc. v. Hartford Accident and Indemnity Company,* 179 So.2d 496 (La.App. 3d Cir.1965), *writ denied,* 248 La. 698, 181 So.2d 398 (La.1966). The work product exclusion plainly indicates that the policy is not intended as a guarantee of the quality of the insured's product or work; the jurisprudence establishes that general liability policies are not performance bonds[6]. *See Allen v. Lawton and Moore Builders, Inc.,* 535 So.2d at 782.

The Fontenots first assert that because the respective "work product" exclusions contained in each policy leave out the term "bodily injury," the claim against them for damages for alleged emotional distress is not barred from coverage. For support, plaintiffs cite a number

of cases holding that exclusion provisions that, by their terms apply only to property damage, do not bar coverage for damages resulting from purely emotional harm.

In *Nelson v. Want Ads of Shreveport, Inc.*, 720 So.2d 1280 (La.App. 2 Cir. 1998), plaintiff sued the defendant newspaper publisher and its owner for damages for mental anguish, anxiety, and emotional distress resulting from a failed business venture allegedly caused by defendant's misconduct. The defendant filed a third-party suit against its insurer which promptly denied coverage and refused to defend the defendant. On appeal of a summary judgment in favor of the insurer, the court held that the definition of bodily injury in the policy which was identical to the one used here allowed for the possibility of purely emotional harm, without any physical trauma.

In *Johnston v. Norcondo* 572 So.2d 203 (La.App. 1 Cir. 1990), the plaintiffs brought an action in redhibition seeking recission, monetary and mental damages. The trial court dismissed the insurer on summary judgment through the application of a work product exclusion materially similar to the two present here. The *Johnston* court noted that the exclusion was "in derogation of the policy's broad grant of coverage and is to be narrowly construed," and refused to extend it's application to "bodily injury."

Although this interpretation operates to remove *Saucier's* claim for emotional distress from the scope of the work products exclusion, it does not change the ultimate determination of coverage under the policy. The "Bodily Injury" definition in both the Commercial Union and Northern Assurance policies contains the requirement that the bodily injury take place "during the policy period." Only such injuries that take place within the policy period are therefore afforded coverage

under the general liability provision[7]. In contrast to the near-impossible task of determining the exact

point when "property damage" actually occurred to the home built by the Fontenots, making that

same determination for any bodily injury alleged in the petition is not nearly as difficult. *Saucier's*

alleged emotional distress was the result of discovering the property damage to his home. That date

of discovery was January 19, 1990. *Saucier* does not assert, nor could a broad reading of his

pleadings include, any allegation of bodily injury occurring before that date. Therefore, no

possibility of coverage exists under the policy because the date of the bodily injury falls well beyond

the coverage period.

## Conclusion

This court recognizes that the issues of coverage and the duty to defend are separate and

distinct, the latter being broader in scope. However, the determination of a duty to defend

necessarily requires consideration of coverage issues. *Orleans Parish School Board v. Scheyd,*

*Inc., et al,* 673 So.2d 274, 276. Applying the "Eight Corners Rule," if the allegations, construed

liberally in favor of the insured, do not unambiguously exclude coverage, the insurer has a duty

to defend. However, if even the broadest of interpretations are given to both documents and still

no possibility of coverage under the policy exists, then the insurer does not have a duty to

defend.[8] Try as they have, the plaintiffs have failed to show a claim for which coverage is not

---

[7]The *Johnston* case is distinguishable from the present case because the policy at issue there had not expired. Thus, it was not difficult for those courts to narrowly interpret the exclusion as failing to affect claims for for bodily injury. In contrast, the policy here has long since expired and any bodily injury alleged here must have occurred during the policy period in order to be afforded even a possibility of coverage.

[8]Plaintiffs wish to point out to the court the fact that in its original refusal to defend, the defendants rationalized their decision by stating that "the loss occurred outside of the policy period." Were it not for plaintiffs' attempts to advance the argument relating to the claims for bodily injury, the defendants' reasoning would be entirely incorrect. Regardless, it was only by coincidence rather than through a thorough examination of the policy and the pleadings that led

unambiguously excluded either under the work product exclusion or by virtue of falling outside of the definition of the term bodily injury for which the general liability provision affords coverage.

Based on the foregoing, this court holds that as a matter of law, neither the Commercial Union nor the Northern Assurance policies provided even a possibility of coverage to plaintiffs for Saucier's claims and no duty to defend ever arose on the part of defendants. Given this court's determination on the duty to defend issue, it is not necessary to address the additional issues relating to damages and the applicability of LSA-RS 22:1220 and/or L.S. A.-RS 22:658.

Therefore, the defendants' Motion for Summary Judgment will be GRANTED, the plaintiffs Motion for Summary Judgment will be DENIED and the entirety of the plaintiffs claim against the defendant be DISMISSED.

Lake Charles, Louisiana, this __21__ day of ~~October~~ July ~~2004~~ 2005.

PATRICIA MINALDI

UNITED STATES DISTRICT COURT

---

defendants to a partially correct conclusion. Under different circumstances, this court would consider this letter strong evidence of bad faith on the part of the defendants in dealing with its insured. However, a strict application of the "Eight Corners Rule" forces this court to ignore extrinsic evidence such as the refusal letters, in determining the existence of a duty to defend. Because coverage was unambiguously excluded - for whatever reason, it becomes immaterial to this particular case that defendants gave an almost wholly incomplete reason for refusing to defend the plaintiffs.